UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MAUREEN A. LAKE                    :
                                   :
        v.                         :        C.A. No. 07-414A
                                   :
MICHAEL J. ASTRUE,                 :
Commissioner of the Social Security :
Administration                     :

## MEMORANDUM AND ORDER

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint on November 14, 2007 seeking to reverse the decision of the Commissioner.  On August 29, 2008, Plaintiff filed a Motion to Reverse the Decision of the Commissioner.  (Document No. 7).  On September 26, 2008, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner.  (Document No. 8).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 8) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 7) be DENIED.

## I.       PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on June 10, 2004, alleging disability as of June 9, 2003.  (Tr. 46-48).[1]  The application was denied initially (Tr. 32-34) and on reconsideration.  (Tr. 37-39).  On August 1, 2006, a hearing was held before Administrative Law Judge Hugh S. Atkins (the "ALJ") at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared. (Tr. 266-293).

On August 25, 2006, the ALJ issued a decision unfavorable to Plaintiff.  (Tr. 14-22).  On September 17, 2007, the Appeals Council considered additional medical evidence (Tr. 9) but denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 6-8).  A timely appeal was then filed with this Court.

## II.      THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred at Step 5 in finding that there were significant numbers of jobs Plaintiff could perform because his questions to the VE were too vague as to sit/stand limitations.  Plaintiff further argues that the ALJ erred in finding Plaintiff's mental impairment to be non-severe.  In particular, Plaintiff contends that the ALJ erroneously discounted the opinions of Plaintiff's consulting psychologist and the state agency psychologist and lacked support for his own findings.  Finally, Plaintiff argues that the ALJ erred in failing to include any mental limitations in his RFC assessment.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ properly evaluated Plaintiff's impairments and that his RFC finding is supported by substantial evidence.  The Commissioner also contends that the record supports the ALJ's Step 5 conclusion that, although

---

[1]  The SSI application is not in the administrative record but is not a matter in dispute.

Plaintiff could not perform her past relevant work, she could perform other work existing in significant numbers in the national economy.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence

establishes without any doubt that the claimant was disabled.  <u>Seavey v. Barnhart</u>, 276 F.3d 1, 11 (1st Cir. 2001) <u>citing</u>, <u>Mowery v. Heckler</u>, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  <u>Seavey</u>, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  <u>Id.</u>; <u>accord</u> <u>Brenem v. Harris</u>, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision.  <u>Freeman v. Barnhart</u>, 274 F.3d 606, 609-610 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  <u>Diorio v. Heckler</u>, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  <u>Freeman</u>, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there

is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Jackson, 99 F.3d at 1095.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id.  The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.   DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.   Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may

discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C.      Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D.      The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled.   20 C.F.R. § 404.1520(b).   Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c).  If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

2. **Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

V.   **APPLICATION AND ANALYSIS**

Plaintiff was thirty-four years old at the time of the ALJ's decision.  (Tr. 46).  Plaintiff has a high school education and has been certified as a dental assistant.  (Tr. 63, 272).  Plaintiff previously worked as an accounts payable clerk, assembler, bartender, cashier, delivery driver, dental assistant, printing consultant, kitchen server, Karaoke disc jockey, data entry clerk, front end supervisor and day care assistant.  (Tr. 58-59, 73).  Plaintiff alleges disability due to a hip impairment (Tr. 57-58, 85) and had difficulty walking, standing, sitting, stair climbing, driving and

sleeping.  (Tr. 66, 70).  Plaintiff worked on her feet until June 2003 as a dental assistant but stopped due to hip pain.  (Tr. 273).

September 2003 MRI studies of Plaintiff's hips showed a tear at the base of the superior labrum (upper rim) of each hip and preserved cartilage.  (Tr. 165-166).  Plaintiff eventually underwent a right hip arthroscopy, performed by Dr. Stephen Murphy.  (Tr. 115-116).  Thereafter, Dr. Murphy assessed rule out internal derangement of the right hip and persistent pain status post right hip arthroscopy (Tr. 146), and an MRI of the right hip showed a new cartilage defect.  (Tr. 153).  A subsequent exam indicated pain with impingement, and Dr. Murphy noted that Plaintiff "certainly has an abnormal hip."  (Tr. 142).  He felt, however, that Plaintiff should learn to live with her symptoms.  Id.

In November 2003, Plaintiff saw Dr. Elisabeth Farnum complaining of increased depression after breaking up with her boyfriend.  (Tr. 131).  She had a sad mood, though her appetite and sleep were "ok."  Id.  She was unemployed, and her hobbies included playing pool and reading.  Id. She was drinking up to five beers twice a week and using marijuana. Id. Dr. Farnum examined Plaintiff but made no findings regarding her depression, and she prescribed Lexapro.  (Tr. 130).  In March 2004, Plaintiff reported to Dr. Farnum that her depression was "ok."  (Tr. 127).

In June 2004, Plaintiff reported to the Commissioner that she was disabled by bilateral hip "displasia [sic] laboral tears" which caused pain with prolonged standing and walking.  (Tr. 57). The following month, Plaintiff reported to the Commissioner that her typical day consisted of preparing breakfast for herself and her son, cleaning the house, watching television, preparing lunch, running errands, reading, talking on the telephone and putting her son to bed.  (Tr. 65).  She attended her son's hockey games, cooked all the family meals, did the housework with some assistance, went

to the beach, swam, went to the movies, went for breakfast with her father, drove, shopped and managed her household finances.  (Tr. 67-69, 72, 82).  She reported that standing, walking, sitting and various postural movements caused some degree of pain.  (Tr. 70).  She had no difficulty paying attention, following instructions, getting along with authority figures or handling routine change.  (Tr. 70-71).  She took Percogesic, an over-the-counter medication, which relieved her pain for up to two to three hours.  (Tr. 81).

In July 2004, Dr. Farnum reported that Plaintiff saw her for assistance with smoking cessation and for menstrual cramps.  (Tr. 126).  Plaintiff also complained of anxiety, with irritability and mood swings, and she reported that she had never taken her Lexapro and was not on any medications.  Id.  Dr. Famum prescribed Wellbutrin SR for Plaintiff's depression.  Id.  Later that month, Dr. Farnum reported to the Commissioner that Plaintiff continued to have hip pain and disability since her January 2004 surgery but that her orthopedist was best qualified to describe her limitations.  (Tr. 121).

On July 29, 2004, Dr. Mallavalli Gopal, a state agency physician, reviewed the record available at the initial level of review and opined that Plaintiff had functional capacities consistent with the performance of light exertional work with occasional postural movements.  (Tr. 134-135).

In September 2004, Dr. Wendy Schwartz performed a consultative psychological evaluation of Plaintiff, who reported that she was applying for disability due to bilateral hip dysplasia and reported a history of anxiety and mood swings but had no idea why she was sent for the psychological evaluation.  (Tr. 171).  Plaintiff was neatly groomed and appeared to have good hygiene.  Id.  Her facial expressions were blunted, gait was slightly tentative, attitude was irritable and mood was depressed.  (Tr. 171-172).  Her affect appeared appropriate, eye contact was fair and

her rapport improved during the evaluation.  (Tr. 172).  She reported having daily contact with her parents and sister and frequent contact with a brother.  Id.  She had a good relationship with her boyfriend of the past year, who lived with her, and she was raising her seven year old son.  Id.

Plaintiff's only medical condition was hip dysplasia, and she was prescribed Wellbutrin.  Id. She reported feeling depressed for the past year and a half and stated that she stopped working due to her hip pain.  Id.  She denied feelings of hopelessness or suicidal ideation and also denied having any problems with memory or concentration.  (Tr. 172-173).  She reported that her mood was sometimes sad, though not always, and that she cried only about once a month.  (Tr. 173).  She stated that she was irritable by nature, would become very angry quickly and that her main psychiatric problem was that "people irk the crap out of me."  Id.  She stated that she slept about six hours a night and had sufficient energy but also had a lot of pain, and she denied having any significant anxiety.  Id.  She reported that she drank less than a beer a day and denied substance abuse.  Id.

Plaintiff reported that her daily activities consisted of getting her son ready for school and puttering around the house.  Id.  She would do housework but would sometimes just sit due to pain id., and she reported moderate to severe problems with task persistence due to pain and physical limitations.  (Tr. 174).  She would visit with neighbors, read, do crossword puzzles and watch television.  (Tr. 173).  She did most of the cooking, cleaning, shopping and bill paying.  Id.  She reported that she got along fairly well with others but was easily annoyed by strangers, and that she had numerous friends and would get together weekly with friends.  (Tr. 174).  She denied any problems with authority figures.  Id.

During the evaluation, Plaintiff was able to sustain focus and to perform serial seven calculations and spell the word "world" backwards. Id. On a mini mental status exam, Plaintiff scored within normal limits. Id. She was alert and oriented, her speech was clear and normal and her thought and association were logical. Id. She had fair to good judgment and insight, a slightly blunted affect, a somewhat agitated and depressed mood, and no significant memory deficits. Id.

Dr. Schwartz summarized that Plaintiff reported a very low tolerance for others and some depressive symptoms since leaving work a year and a half earlier. Id. She assessed an adjustment disorder and rule out anxiety. Id. She opined that Plaintiff's functional limitations appeared to be due to her physical impairment and some secondary emotional issues. Id. She felt Plaintiff was not significantly limited due to concentration or intellectual deficits, though she would appear to have moderate limitations responding appropriately to customary work pressures and to coworkers and supervisors. (Tr. 175). She also opined that personally, Plaintiff was moderately to severely limited by her physical impairment. Id.

In October 2004, Dr. Nancy Keuthen, a state agency psychologist, reviewed the record available and opined that Plaintiff could understand and remember simple and complex tasks and could sustain adequate task focus and pace, though she would be prone to distraction if working in close proximity to others. (Tr. 178). Dr. Keuthen further opined that, based on Plaintiff's statement that she was easily "irked" by others, she should have limited contact with the public and a supportive, tolerant boss. Id. Finally, she opined that Plaintiff's stress tolerance was reduced but that she was capable of predictive work routines, as evidenced by her household management and child care activities. Id.

In January 2005, Dr. Joseph McCarthy and Nurse Practitioner Joanne Lee saw Plaintiff who complained of bilateral hip pain.  (Tr. 213).  Plaintiff reported undergoing a right hip arthroscopy in January 2004 with no improvement and having additional damage to the cartilage.  Id.  She complained of pain in the anterior groin which was sharp at times and constantly achy.  Id.  On exam, Plaintiff walked with a slight limp, had slightly decreased strength in the hips, and had a "positive McCarthy sign" and pain with straight leg raises on the right side.  (Tr. 214).  Dr. McCarthy assessed a torn labrum of the right hip and acetabular dysplasia and discussed the possibility of a second right hip arthroscopy.  Id.

In April 2005, Dr. Edwin Davidson, a state agency psychiatrist, reviewed the record available at the reconsideration level of review and opined that there was insufficient evidence that Plaintiff had any mental impairment (Tr. 194), also noting that Plaintiff had failed to attend a consultative evaluation.  (Tr. 206).  At the reconsideration level of review, Dr. Mark Colb, a state agency physician, reviewed the record available and opined that Plaintiff could lift/carry ten pounds frequently and twenty pounds occasionally, stand/walk for four hours, and sit for six hours during an eight-hour day and that she could occasionally perform postural movements.  (Tr. 108-109). Plaintiff underwent a revision arthroscopy of the right hip on April 26, 2005, performed by Dr. McCarthy.  (Tr. 217-218).  The following month, Nurse Practitioner Lee saw Plaintiff for removal of her sutures, and Plaintiff reported that she was doing well, that her hip felt much better, and that she was walking without discomfort and doing very well.  (Tr. 212).  On exam, she had a slight limp and was found to be making satisfactory progress.  Id.  She was restricted from pivoting, twisting, hyperextension, high impact, and heavy lifting and was to follow up in six weeks.  Id.

Records from Thundermist Health Clinic indicate that in April 2006, Plaintiff was complaining of anxiety and depression and was taking Zoloft, but her psychiatric and physical exams revealed no abnormalities.  (Tr. 210).  A subsequent exam in June 2006 also revealed no abnormalities.  (Tr. 208).

In July 2006, Plaintiff saw Dr. Jesus Hernandez, a Neurologist, for a neurological evaluation of fainting spells.  (Tr. 260).  Plaintiff reported that she had an episode in May 2006 during which she suddenly felt tired, repeated the same phrase over for about ten minutes, and then had a seizure. Id.  She went to the hospital and underwent a CT scan of the head, which was normal.  (Tr. 258, 260).  Plaintiff reported having no history of seizures or epilepsy, though she reported discontinuing a prescription of Zoloft after having a seizure.  (Tr. 260).  Plaintiff reported that she used cocaine frequently, smoked marijuana regularly and drank alcohol occasionally.  (Tr. 261).

Dr. Hernandez performed physical and neurological exams, which were unremarkable, and he felt Plaintiff's seizure was suggestive of complex partial seizures of unclear etiology.  (Tr. 261-262).  He ordered MRI and EEG studies (Tr. 263-264), and in September 2006, he reported that given Plaintiff's normal exams, her diagnostic studies, and the lack of any further reoccurrence of her symptoms, he was unsure of the etiology of Plaintiff's isolated altered mental status.  (Tr. 265).

A.      **The ALJ's Step 5 Finding is Supported by Substantial Evidence**

The ALJ decided this case adverse to Plaintiff at Step 5.  The ALJ concluded that Plaintiff suffered a hip disorder which restricted her to a limited range of sedentary work.  (Tr. 18-20).  In particular, work which only involves lifting and carrying up to ten pounds and can be performed primarily in a seated position with an "at will" sit/stand option.  (Tr. 20).

Based on this RFC and testimony from the VE, the ALJ concluded that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the regional economy.  (Tr. 22).  The ALJ identified the positions of assembler, inspector and production laborer as representative positions.  (Tr. 21).

Plaintiff's primary avenue of attack on the ALJ's non-disability finding arises out of the ALJ's examination of the VE.  Plaintiff contends that the ALJ posed an overly "vague" hypothetical to the VE and thus the VE's opinion was not specific enough as to the frequency of the need to alternate between sitting and standing to support the ALJ's RFC finding.  The particular exchange between the ALJ and the VE was as follows:

> Q      Mr. Smith, if I find that the individual can perform at the sedentary level but with the need to, to sit stand and for postural changes, are there jobs that exist in significant numbers?
>
> A      Yes, jobs such as assembler, approximately nine hundred to a thousand throughout Southeastern Mass, inspector approximately two or three hundred, in the, in the same region, general laborer, production labor at sedentary level, approximately seven hundred to eight hundred.

(Tr. 291).  The VE did not ask the ALJ to clarify his question or to define the limits on the sit/stand option.  Plaintiff's counsel questioned the VE and did not ask about the scope of the sit/stand option or otherwise raise the issue with the ALJ.  (Tr. 291-293).  Rather, she asked if adding additional postural limitations on twisting, turning, pivoting and hyper-extending would preclude work in the sedentary positions identified by the VE.  (Tr. 292).  The VE said it would not.  Id.

Plaintiff contends that "the ALJ clearly violated the Commissioner's own policy as enunciated in SSR 96-9p."  (Document No. 7 at p. 10).  Social Security Ruling ("SSR") 96-9p addresses the impact of an RFC assessment for less than a full range of sedentary work on a

claimant's ability to do other work.  As to the impact of a sit/stand requirement on the ability to

perform sedentary work, SSR 96-9p states, in relevant part, that:

> The RFC assessment must be specific as to the frequency of the
> individual's need to alternate sitting and standing.  It may be
> especially useful in these situations to consult a vocational resource
> in order to determine whether the individual is able to make an
> adjustment to other work.

Plaintiff has not shown a violation of SSR 96-9p.

First, the ALJ's RFC assessment is specific as to a sit/stand option.  The ALJ found that

Plaintiff's "capacity for the full range of sedentary work is reduced by a requirement that she be able

to change positions at will."  (Tr. 20).  Second, the ALJ utilized evidence from a VE and thus

followed the recommendation of SSR 96-9p to "consult a vocational resource in order to determine

whether the individual is able to make an adjustment to other work."  Although the ALJ did not use

the particular words "at will" in presenting the sit/stand hypothetical to the VE, he advised that the

hypothetical individual would have "the need to, to sit stand and for postural changes."  (Tr. 291).

It is clear that the VE incorporated a sit/stand option into his opinion on the existence of

sedentary jobs matching Plaintiff's RFC.  The only reasonable interpretation of the ALJ's

description of a "need to...sit stand and for postural changes" is that the claimant would have the

option to sit or stand at her discretion.  Cf. Hodge v. Barnhart, 76 Fed. Appx. 797, 800, 2003 WL

22176639 at * 2 (9th Cir. 2003).  It is apparent that Plaintiff's attorney, at the ALJ hearing, had the

same impression as she incorporated "that sit and stand postural change requirement" in her own

hypothetical without providing any specificity as to frequency.  (Tr. 292).  Plaintiff has shown no

reversible error.

### B.       The ALJ Properly Evaluated Plaintiff's Claimed Mental Impairment

Plaintiff contends that the ALJ erred by failing to (1) conclude that her mental impairment is severe under 20 C.F.R. § 404.1520a; and (2) incorporate mental limitations in his RFC.  At the ALJ hearing, Plaintiff's counsel stated that Plaintiff "has what the Social Security Lawyer, or Doctor defined as an Adjustment Disorder but she would term as anxiety and depression, primarily as a result of the pain and the stress that she's been under."  (Tr. 270).  The ALJ discussed the record of Plaintiff's mental health treatment and found her "adjustment disorder to be a 'non-severe' impairment as defined in the regulations, as it does not in itself cause her to have significant, vocationally relevant limitations."  (Tr. 19).

Plaintiff's initial application for benefits was limited to her hip disorder and did not allege any mental health limitations.  (Tr. 57).  On September 29, 2004, Dr. Schwartz, a state agency psychologist, conducted a psychological evaluation of Plaintiff.  (Ex. 8F).  Plaintiff questioned the necessity of such an evaluation and advised Dr. Schwartz that "I don't know why the hell I am here."  (Tr. 171).  Dr. Schwartz diagnosed Adjustment Disorder with depression and noted that Plaintiff's "functional limitations appear to be due primarily to physical limitations which would have to be further evaluated by a medical professional, as well as some secondary emotional issues."  (Tr. 174).  There is no record of Plaintiff seeing a psychiatrist, psychologist or counselor for treatment.  Plaintiff was prescribed Lexapro (an anti-depressant) by her treating physician (Tr. 130) but never took it.  (Tr. 126).  She was also prescribed Wellbutrin for anxiety and Zoloft for a period but discontinued it after experiencing a seizure of unknown etiology.  (Tr. 126, 260).

Both Dr. Schwartz (Ex. 8F) and Dr. Kuethen (Ex. 10F), a state agency non-examining psychologist, found Plaintiff to be moderately impaired in maintaining social functioning.  (Tr. 175,

-20-

177, 190).  However, they based their findings, in large part, on Plaintiff's subjective reports such as "people irk the crap out of [her]" and that she "tend[s] to get annoyed easily by strangers."  (Tr. 173, 178).  The ALJ concluded that Plaintiff's allegations were "not entirely credible in light of her daily activities, and the degree of medical treatment required."  (Tr. 20).  Medical opinions based largely on subjective complaints may be discounted by an ALJ under these circumstances.  See Reeves v. Barnhart, 263 F. Supp. 2d 154, 161 (D. Mass. 2003).  Further, Dr. Schwartz's conclusions regarding social functioning are not objectively supported by the record.  Dr. Schwartz noted that Plaintiff enjoyed working and stopped only due to pain.  (Tr. 173).  It is noteworthy that most of Plaintiff's prior successful work experience involved significant public contact.  Dr. Schwartz also reported that Plaintiff visited with neighbors, "gets along fairly well with others," had "weekly get togethers" with her friends and has numerous friends.  (Tr. 173-174).  Plaintiff also denied to Dr. Schwartz "any history of problems with authority figures."  (Tr. 174).  Thus, Dr. Schwartz's finding of moderate impairments in social functioning is simply not supported by the record as a whole or her report.  Plaintiff also completed a functional activity questionnaire for the Commissioner approximately two months after Dr. Schwartz's evaluation (see Ex. 9E) which reported a wide range of daily activities and relatively normal social functioning.

The ALJ considered the "entirety of the record of [Plaintiff's] mental health treatment" and Plaintiff's credibility in concluding that Plaintiff's adjustment disorder presented only mild limitations in activities of daily living and social functioning.  (Tr. 19).  The record provides ample support for the ALJ's conclusion and finding that Plaintiff's mental impairment did not cause "significant, vocationally relevant limitations."  Id.  Plaintiff is a young mother who led an active life and now is limited to sedentary work by a hip disorder.  While the Court does not discount the

emotional strain caused by an adjustment to a different life style, the issue is not whether this Court would have included non-exertional restrictions in Plaintiff's RFC caused by her adjustment disorder.  Rather, the issue is whether there is substantial evidence in the record to support the ALJ's RFC finding.  "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also."  Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 9, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1 (1st Cir. 1987)).  Since the record is supportive of the ALJ's conclusion, it is entitled to deference and should be affirmed.

## VI.   CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 8) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 7) be DENIED.  Final judgment shall enter in favor of the Commissioner.


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
November 17, 2008